IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| RITA HARMAN, Individually and on, Behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACT. NO. 3:21-cv-697-ECM (WO) |
| TAURUS INTERNATIONAL, MANUFACTURING, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

Plaintiff Rita Harman alleges her Taurus PT 738 TCP Pistol (hereinafter, "PT 738 pistol") malfunctioned due to a defect in the pistol's slide component.  She brings this class action against defendants Taurus International Manufacturing, Inc. ("TIMI")— the manufacturer of the PT 738 pistol—and Taurus Holdings, Inc. ("Taurus Holdings")[1] (collectively, "Defendants"), on her behalf and all those similarly situated.  In her second amended complaint (the operative "complaint"), Plaintiff asserts six claims:  violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I), violation of the Alabama Deceptive Trade Practices Act ("ADTPA") (Count II), breach of express

---

[1] Taurus Holdings is the one hundred percent stockholder of TIMI.  The Defendants challenge Taurus Holdings' presence in the case altogether because, as they argue, Plaintiff has not alleged facts sufficient to justify piercing the corporate veil and holding TIMI's owner liable for TIMI's alleged wrongdoing. The Court need not address whether Taurus Holdings is a proper defendant in this case because, as the Court will discuss below, Plaintiff's second amended complaint fails to state a claim against either defendant.

warranty (Count III), breach of implied warranty of merchantability (Count IV),[2] violation of the Magnuson-Moss Warranty Act ("MMWA") (Count V), and declaratory relief (Count VI).[3]

Now pending before the Court is the Defendants' motion to dismiss for failure to state a claim. (Doc. 80). The motion is fully briefed and ripe for review. After careful consideration, the Court concludes that the Defendants' motion is due to be GRANTED.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction of this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The Court has supplemental jurisdiction of the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(A)(2). "To survive a motion to dismiss, a complaint must contain

---

[2]  Plaintiff conceded her claim for breach of implied warranty in her brief in response to the Defendants' motion to dismiss; accordingly, Count IV is due to be DISMISSED.

[3]  Declaratory relief is an equitable remedy, "not [a] stand-alone cause[] of action that can be pleaded as [an] independent count[]." *Griffin v. Lee Cnty. Bd. of Educ.*, 2019 WL 1338896, at *6 (M.D. Ala. Mar. 25, 2019). The claim in Count VI for declaratory relief, therefore, is not a stand-alone cause of action. Furthermore, because the Court finds Plaintiff has failed to state a substantive claim against either Defendant, "there is no remaining cause of action that can support declaratory . . . relief." *Id.*

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

The determination of "whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570.  This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotations and citations omitted).  Indeed, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations and citations omitted).

## IV.  FACTS[4]

Plaintiff's husband, Chris Harman, purchased a Taurus PT 738 pistol from a retail store in Opelika, Alabama, on or about December 13, 2011, and gave it to his wife as a

---

[4]  This recitation of the facts is based on Plaintiff's second amended complaint ("complaint").  The Court recites only the facts pertinent to resolving the Defendants' motion to dismiss.  For purposes of ruling on the motion, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Plaintiff.

gift.  Plaintiff's husband was seriously injured on November 27, 2020, at a firing range when the PT 738 pistol blew apart, causing metal pieces to strike him in the face and eye. Plaintiff alleges the pistol was designed, manufactured, assembled, and marketed by the Defendants in Florida.

The PT 738 pistol, according to Plaintiff, is defective and unreasonably dangerous because its design and manufacture suffer from a defect which renders the pistol subject to a dangerous weakening or fracturing of the pistol's components.  The slide allegedly breaks in half at the ejection port and the pieces of the slide become dangerous projectiles which can strike the shooter or bystanders.  Plaintiff's complaint further alleges that despite actual knowledge of the defect, the Defendants never remedied the defect, never issued an effective and complete warning to the public, and never recalled the PT 738 pistol.  In fact, Plaintiff alleges that prior to placing the pistol's product line into the marketplace in 2009, the Defendants instructed their internal marketing and design teams not to warn the public about it.

Plaintiff alleges that in 2012, the slide on consumer Brian Aunkst's ("Aunkst") PT 738 pistol broke in an identical way to hers, causing the pistol to explode in his hand. According to the complaint, the Defendants failed to fully investigate what caused the slide to break apart.  Despite knowing about and inspecting Aunkst's defective pistol, Plaintiff claims the Defendants again instructed their marketing teams to avoid mentioning the defect in advertising materials and continued to market PT 738 pistols as safe firearms.

According to Plaintiff, the Defendants provided four express warranties for the PT 738 pistol.  First, any handgun manufactured by the Defendants carried with it a limited warranty "to be free from defects in material and workmanship."  Second, the Defendants provided purchasers of their guns with an unlimited lifetime repair warranty.  Third, Plaintiff claims that the Defendants publicized their "commit[ment] to the very highest standards of quality, dependability, and most of all, customer satisfaction," which constituted an express warranty that their guns were free from design and manufacturing defects.  Finally, in the instruction manual for the PT 738 pistol, the Defendants reiterated their lifetime repair policy and limited warranty, and represented that their pistols "were manufactured to perform properly with the original parts as designed."

Plaintiff filed her original complaint in the Southern District of Florida on February 2, 2021, bringing claims for violation of FDUTPA; negligence; strict liability; breach of express warranty; breach of implied warranty of merchantability; violation of MMWA; negligent failure to disclose, failure to warn, concealment and misrepresentation; fraudulent concealment and intentional failure to warn; and seeking declaratory relief. (Doc. 1).  On March 25, 2021, Plaintiff filed her first amended complaint with the same claims. (Doc. 26).  The case was then transferred to this Court on October 18, 2021, and consolidated for discovery purposes with Plaintiff's husband's private action against the Defendants (Civ. Act. No. 3:21-cv-98) for discovery purposes. (Doc. 43).  In response to the Court's order granting in part and denying in part the Defendants' motion to dismiss or for a more definite statement (doc. 70), Plaintiff filed

her complaint (doc. 71) on March 18, 2022, for which the Defendants bring this motion to dismiss (doc. 80).

## V. DISCUSSION

The Defendants move to dismiss all counts against both Defendants.  The Court will first address the warranty claim, and then the claims under the FDUTPA and ADTPA.

### A.    Express Warranty

Plaintiff claims that the Defendants violated an express warranty that the PT 738 pistol be free from both design and manufacturing defects.  To determine whether she sufficiently pleaded such a claim, the Court must first determine what law applies. Because Plaintiff's case was transferred to this Court from Florida, Florida choice-of-law principles apply. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013).  Florida's choice-of-law rule applies the doctrine of *lex loci contractus* to contract actions and considers where the contract was executed. *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1315–16 (S.D. Fla. 2009).  In this case, the complaint alleges that the PT 738 pistol was purchased in Opelika, Alabama.  Therefore, Alabama law applies to the warranty contract claims.

An express warranty, under Alabama law, is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." ALA. CODE § 7-2-313(1)(a).  The seller need not use the words "warrant" or

6

"guarantee" to create an express warranty, "but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." ALA. CODE § 7-2-313(2).

Plaintiff brings her claim for breach of express warranty as a third-party beneficiary. "[A] manufacturer's express warranty, like any contractual obligation, may run in favor of a third-party beneficiary." *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1338 (11th Cir. 2015).  To seek recovery under an express warranty, individual buyers, like Plaintiff's husband, must "give notice [to a warrantor] of an alleged breach of warranty prior to filing a civil action." *Simmons v. Clemco Indus.*, 368 So. 2d 509, 513 (Ala. 1979).  However, Alabama law does not require third-party beneficiaries of a contract to give notice of a breach of warranty before bringing suit. *Id.* To recover as a third-party beneficiary on such a claim in Alabama, a plaintiff must show that (1) the contracting parties intended to bestow a direct benefit on the plaintiff third party, (2) that the plaintiff was the intended beneficiary, and (3) that the contract was breached. *Lisk*, 792 F.3d at 1338 (citing *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So. 2d 99, 101–02 (Ala. 1987)).

The Defendants argue that Plaintiff has failed to allege breach of contract because TIMI expressly warranted either against *manufacturing* defects in the PT 738 pistol—not design defects—or that they would repair any manufacturing flaws. According to the Defendants, the allegations in the complaint only point to a defect in the PT 738 pistol's design, not its manufacturing.  Additionally, they argue, Plaintiff has not alleged facts

that the Defendants failed to repair the pistol according to the repair warranty.  Plaintiff, however, contends that she has sufficiently pleaded a defect in both design and manufacture and that the Court should not presume the alleged defect was in design only. At this stage, she maintains, the Court should permit the case to go forward on the allegation that both the PT 738 pistol's manufacturing and its design were defective so that Plaintiff can later, after development of the facts, pinpoint the cause of the defect. She further argues that the language of the repair warranty did not require Plaintiff to return the pistol for repair before suing for breach.

The Court finds that Plaintiff has failed to adequately state a claim for breach of express warranty.  An express warranty that exclusively warrants against flaws in "materials and workmanship" covers only manufacturing defects, not design defects. *See Tull Bros., Inc. v. Peerless Prods, Inc.*, 953 F. Supp. 2d 1245, 1257 (S.D. Ala. June 18, 2013) ("A written warranty against defects in materials or workmanship does *not* encompass a warranty against defects in design." (emphasis in original)); *see also Vazquez v. Gen. Motors, LLC*, 2018 WL 447644, at *3 (S.D. Fla. Jan. 16, 2018) ("'Materials or workmanship' is a specialized phrase that refers particularly to manufacturing defects."); *Bruce Martin Constr., Inc. v. CTB, Inc.*, 735 F.3d 750, 754 (8th Cir. 2013) (holding that a warranty exclusively covering "material and workmanship" cannot include "a design warranty" because the parties cannot have contemplated such language "would thus extend coverage to any product defect").

8

Although Plaintiff alleges that she was an intended third-party beneficiary because her husband purchased the PT 738 pistol for her, relying in part on her desire for the pistol's warranties, (doc. 71 at 12), she fails to present any facts demonstrating that the warranties she desired warranted against anything other than manufacturing defects or repairs.  The applicable potential warranties referred to in the complaint, which were attached to the Defendants' motion to dismiss,[5] were (1) the Defendants' commitment to high highest standards of quality, dependability, and customer satisfaction; (2) the unlimited repair policy; and (3) the limited warranty that the pistol would be free from workmanship and material defects. (Doc. 71 at 12–13).[6]

Plaintiff unduly construes the Defendants' advertising of its commitment to high standards of quality, dependability, and customer satisfaction as an express warranty. However, no facts alleged demonstrate that these statements "relate[d] to the good[]" sold—her particular PT 738 pistol—nor how they became "part of the basis of the bargain" to create an express warranty. *See* ALA. CODE § 7-2-313(a).  Second, to allege

---

[5]  Although courts generally only consider the language of a complaint in deciding a Rule 12(b)(6) motion to dismiss, they may consider an extraneous document when, as occurred here, a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

[6]  Plaintiff argues that parts of the PT 738 pistol's instruction manual created an express warranty that it would be free from design defects because it claimed the Defendants test fired and inspected the pistols pre-sale, and that the pistols "were manufactured to perform properly with the original parts as designed." (Doc. 80-3 at 10, 30).  Assuming without deciding the manual in fact created an express warranty against design defects, Plaintiff did not allege that she read or knew the contents of the manual prior to her husband's purchase of the PT 738 pistol such that it formed a basis of the bargain for the pistol. (*See* Doc. 71 at 12–13 (referring only to knowledge of the limited warranty and unlimited lifetime repair policy as the basis of the bargain)).  Thus, under the facts alleged, Plaintiff cannot state a claim under any express warranty mentioned in manual.

an express warranty, Plaintiff must provide that the Defendants did more than make "an affirmation merely of the value of the [PT 738 pistol] or a statement purporting to be merely the seller's opinion or commendation of the [pistol]." ALA. CODE § 7-2-313(2); *see also Bagley v. Mazda Motor Corp.*, 864 So. 2d 301, 314 (Ala. 2003) ("[Defendant] extended no express warranty to the [plaintiff when its salesman] told her that the 1980 Mazda 'was a good car' and that it was 'about the best one they had on the dealership lot at the time.'" (alteration adopted)).  Alleging an express commitment to quality, dependability, and customer satisfaction is "puffing," which does not rise to the level sufficient to plead an express warranty claim. *See Smith v. Coleman Co.*, 2010 WL 447325, at *6 (M.D. Ala. Feb. 4, 2010).  Such statements are not "representations of fact" pertaining to an identifiable product that may give rise to an express warranty, but rather are "closer to the description of [a line of] item[s] as 'in good shape' that Alabama courts have found to constitute 'puffery.'" *Id.* (citing *Scoggin v. Listerhill Emps. Credit Union*, 658 So. 2d 376, 377 (Ala. 1995)).  Thus, the only plausible express warranties created by the Defendants, under the facts alleged, were (1) its unlimited lifetime repair warranty and (2) its warranty that the PT 738 pistol was free from defects in materials and workmanship.

Addressing these warranties in turn, Plaintiff first fails to allege facts demonstrating the Defendants denied repairs to her PT 738 pistol after it was damaged. Although she provides no argument in her responsive brief for how the Defendants breached its express warranty to repair, beyond the unsupported claim that she did not

need to return the pistol to claim relief under the terms of the warranty, Plaintiff asserts in her complaint that this express warranty created a duty to proactively "recall, repair, or replace" her PT 738 pistol after Aunkst's PT 738 pistol malfunctioned in 2014. (Doc. 71 at 29). But Plaintiff has not alleged she "sought or was denied repairs for any alleged defect." *Hurry v. Gen. Motors LLC*, 2022 WL 3587349, at *5 (M.D. Ala. Aug. 22, 2022) (applying Alabama law) (quoting *Hackler v. Gen. Motors LLC*, 2022 WL 270867, at *9 (S.D. Ga. Jan. 28, 2022) (applying similar Florida law)). Courts in Alabama have previously found that express warranties to repair necessarily "anticipate[] that defects may occur," *id.* (citation omitted), and that a manufacturer only breaches the warranty if it "fails its promise to *remedy* defects *under the terms of the warranty*." *Freeman v. NIBCO, Inc.*, 526 F. Supp. 3d 1112, 1130 (N.D. Ala. 2020) (emphasis in original). A breach of a repair warranty cannot occur unless a manufacturer is given an opportunity to fulfill its promise under the warranty and subsequently fails to do so. *See id.* (finding the defendant's "duty to perform never arose" because, under "the terms of the express warranty," the plaintiffs never sent the "defective products to [the defendants] for inspection"). Under Plaintiff's facts, even though the website and instruction manual advertising the unlimited repair policy did not explicitly say Plaintiff had to return the pistol to effectuate a warranty claim, the Defendants were never given a chance to repair her pistol. Thus, they never had the opportunity to fulfill its promise to repair.

To the extent that Plaintiff claims the Defendants breached the repair warranty by not proactively recalling or replacing her PT 738 pistol after they became aware of

Aunkst's defective pistol in 2014, no such duty exists under Alabama law. *Kelly v. Taurus Int'l Mfg., Inc.*, 2021 WL 2020611, at *1 n.1 (N.D. Ala. Jan. 15, 2021) ("[N]either Alabama nor any other state recognizes or imposes a common law duty to recall." (quoting *Lampley v. Bridgestone Firestone Inc.*, 1992 WL 12666661, at *1 (M.D. Ala. Mar. 31, 1992))).  For these reasons, Plaintiff has not alleged facts demonstrating a breach of the Defendants' express warranty to repair.

Second, Plaintiff fails to allege a breach of the Defendants' express warranty against materials and workmanship defects because no facts alleged plausibly demonstrate that a manufacturing defect caused the PT 738 pistol's slide to shatter.  In Alabama, manufacturing defects occur "when one, or a few, of the products of a line are defective." *McDaniel v. Mylan, Inc.*, 2019 WL 11638407, at *5 (N.D. Ala. Dec. 16, 2019) (quoting *Schwartz v. Volvo N. Am. Corp.*, 554 So. 2d 927, 941 n.5 (Ala. 1989) (Hornsby, C.J., concurring in part and dissenting in part) (contrasting manufacturing defects with design defects)).  Design defects, however, "are defects that persist throughout the entire product line." *Id.* at *4.

The Defendants expressly restricted its limited warranty to flaws in workmanship and materials—i.e., manufacturing defects.  Plaintiff's complaint nevertheless goes to great length to show that the damage for which she seeks compensation was caused by a "latent design defect" in the PT 738 pistol product line. (*See, e.g.*, Doc. 71 at 3, 4, 8, 9, 13, 22).  In fact, the harm common to all proposed class members, according to Plaintiff, is "the common design of the Class Pistols," which "suffers from a Defect which renders

12

the Class Pistols subject to a dangerous weakening and fracturing of the pistol components." (Doc. 71 at 3).  The only injury alleged—that "the pistol's slide broke in half, sending fragments of the slide" flying—was allegedly caused by the entire product line's design that "attempts to combine two separate functions into one component" that "can provide false-positive indicators of proper re-assembly and may work loose during normal use." (*Id.* at 13, 8–9).  Although Plaintiff refers to the defect as a flaw in both "the design and manufacturing of the slides," (*see id.* at 8, 18, 22, 30), the only facts she provides relates to the PT 738 pistol's faulty *design*, not its workmanship or materials.  Thus, her allegations that the defect was in the pistol's manufacturing are "mere conclusory statements" without factual support, and consequentially are insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

Plaintiff's request for declaratory relief reveals the improper conflation of manufacturing and design defects.  She asks this Court to declare that the PT 738 pistols "have a common design Defect in workmanship and material that allow the slides on the Pistols to break apart unexpectedly while being fired." (Doc. 71 at 33).  This is essentially a request to declare that the PT 738 pistol's manufacturing defect was its design defect, a conclusion that fails to distinguish the two types of defects under Alabama law. *See Schwartz*, 554 So. 2d at 941 n.5 (contrasting manufacturing defects with design defects, where the entire product line is defective as opposed to a select few of the products); *see also McDaniel*, 2019 WL 11638407, at *4–5 (distinguishing between the two types of defects).  Because the complaint provides factual allegations of a design defect in the PT

738 pistol—not a manufacturing defect—Plaintiff has failed to state a claim for breach of express warranty.[7]  Count III is due to be DISMISSED.

## B.    FDUTPA Claim

Defendants argue that Plaintiff's claim under the FDUTPA is time barred because the statute of limitations has run.  As the parties agree, the statute of limitations for a FDUTPA claim is four years. FLA. STAT. § 95.11(3)(f).  "When a FDUTPA claim is based on a product purchase, the statute begins to run from the date of sale." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1228 (S.D. Fla. 2021) (citation omitted).  The theory of fraudulent concealment, however, "may toll the statute of limitations when a defendant engages in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Id.* (quotations and citation omitted).  To toll the statute of limitations under this theory, a plaintiff must allege "(1) successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim." *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013) (citation omitted).  "The 'fraudulent means' must go beyond mere non-disclosure, and must constitute active and willful concealment." *Id.* (quoting *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir.

---

[7]  Because Plaintiff has not sufficiently alleged an express warranty claim and she has conceded her implied warranty claim, there is no underlying warranty claim on which she can maintain a MMWA claim. 15 U.S.C. § 2301(7) (giving consumers a federal private right of action against warrantors for a breach of warranty defined by state law); *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1304 (S.D. Fla. 2017) ("[A MMWA] claim only exists if a valid breach of warranty claim is also stated." (citing *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 n.1 (11th Cir. 2006))).  Thus, Count V is to be DISMISSED.

2003)).   A defendant's concealing conduct underlying fraudulent concealment tolling "must occur after the plaintiff's cause of action has already accrued, which, in this case, occurred on the date of purchase." *Lewis*, 530 F. Supp. 3d at 1229.

According to Plaintiff, her allegation that the Defendants instructed their marketing teams to omit information of the defect from advertisements justifies tolling the statute of limitations under the theory of fraudulent concealment.   Particularly, Plaintiff contends that the Defendants took affirmative action to conceal the defect after Aunkst was injured in 2014, yet they affirmatively marketed the pistol as safe. Instructing their employees to avoid drawing customer attention to the defect, plaintiff maintains, is not "mere nondisclosure" but active and willful concealment.

The Court is persuaded, however, by the multiple Florida district courts that have found the opposite.   For example, in *Lewis*, the plaintiffs alleged the defendant car manufacturer took "affirmative steps to conceal [their vehicles'] defect" and yet made marketing statements, relied upon by the plaintiffs, regarding its warranties and "its reputation for safety and reliability." *Id.* at 1230 (quotations omitted).   The court first found that to toll the statute of limitations under fraudulent concealment, the plaintiffs would have had to point to affirmative steps taken by the defendant to keep the plaintiffs from discovering their cause of action. *Id.*   Allegations that the defendant "actively concealed" the defect by taking "affirmative steps" to misrepresent the safety of its product in marketing, however, "did not establish a misrepresentation as opposed to a mere nondisclosure." *Id.* at 1229.   Mere nondisclosure of a defect in product marketing

15

cannot form the basis of fraudulent tolling. *Lewis*, 530 F. Supp. 3d at 1230; *see also Fisher v. Harley-Davidson Motor Grp., LLC*, 2019 WL 8014364, at *2 (S.D. Fla. Oct. 18, 2019) (allegations that defendant affirmatively marketed its product as safe, even though it knew of dangerous defects, did not establish misrepresentation, but rather "mere nondisclosure"); *Licul*, 2013 WL 6328734, at *6 ("[A]llegations of [defendant's] inaction and non-disclosure are wholly insufficient to supply the affirmative steps taken to prevent plaintiffs from discovering the basis of their claims that would be necessary before tolling based on fraudulent concealment becomes appropriate.").

The court in *Lewis* next found that even if the plaintiffs' allegations amounted to more than mere nondisclosure, the statute of limitations could not be tolled because they did "not allege that [the marketing] materials played any role in preventing them from learning of their lawsuit after the FDUTPA claim accrued at the time of sale. Quite the opposite: Plaintiffs allege[d] that they only relied on such materials *before* purchasing their vehicles." *Lewis*, 530 F. Supp. 3d at 1230 (emphasis in original); *see also Burr v. Philip Morris USA Inc.*, 2012 WL 5290164, at *4 n.5 (M.D. Fla. Sept. 28, 2012) ("Fraudulent concealment concerns itself with a defendant's conduct *after* it has injured a plaintiff and the defendant's efforts to conceal the resulting claim the plaintiff might assert." (emphasis added)).

The only arguable "fact" that Plaintiff alleges in this case pertaining to fraudulent concealment tolling is that before Plaintiff's husband purchased the PT 738 pistol, the

Defendants directed their internal marketing teams to avoid mentioning the defect.[8]  This

conduct, however, occurred *before* her husband bought the pistol, and cannot be the basis

for fraudulent concealment tolling.  *See Lewis*, 530 F. Supp. 3d at 1230.   That the

Defendants allegedly continued to instruct its marketing teams to "avoid mentioning" the

defect after Aunkst was injured in 2014—like the concealment allegations in *Lewis*,

*Licul*, and *Fisher*—only "amount[s] to mere nondisclosure." *Id.*

Thus, the theory of fraudulent concealment tolling cannot apply under the facts

alleged.  Because the statute of limitations accrued on the day of purchase, on or about

December 13, 2011, the last day Plaintiff could have brought a FDUTPA claim was

December 13, 2015.  Therefore, Plaintiff's FDUTPA claim brought in 2021 is barred, and

Count I is due to be DISMISSED.

## C.   ADTPA Claim

This Court gave Plaintiff an opportunity to re-plead her express warranty, implied

warranty, MMWA, FDUTPA, and Declaratory Relief claims. *See Harman v. Taurus Int'l

Mfg., Inc.*, 2022 WL 479139, at \*11 (M.D. Ala. Feb. 16, 2022).   Without moving for

leave to amend her complaint to add a claim, Plaintiff nonetheless added an ADTPA

claim to her complaint.   She justifies the addition, arguing that the claim is brought in the

alternative—in the event that the Court finds Florida law does not apply.   Although a

claim added without leave under Federal Rule of Civil Procedure 15(a) "*is without legal*

---

[8]  Tellingly, the only case that Plaintiff cites as support for this allegation being sufficient to toll the
statute of limitations did not apply Florida law, and it discussed a cause of action for fraudulent
concealment itself, not as a theory to toll the FDUTPA's statute of limitations. *See In re: Gen. Motors
LLC Ignition Switch Litig.*, 2016 WL 3920353, at \*34 (S.D.N.Y July 15, 2016).

*effect*," the Court may consider "an untimely amended pleading . . . when leave to amend *would have been granted had it been sought* and when it does not appear that any of the parties will be prejudiced by allowing the change." *Hoover v. Blue Cross and Blue Shield of Ala.*, 855 F.2d 1538, 1544 (11th Cir. 1988) (emphasis in original) (quoting 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1485 (1971)).

However, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Futility occurs "when the complaint as amended is still subject to dismissal." *Id.* at 1263. Courts have dismissed amended complaints as futile when proposed new claims run afoul of a statute of limitations. *See, e.g.*, *Moore v. Baker*, 989 F.2d 1129, 1132 (11th Cir. 1993) (denying amendment as futile because statute of limitations expired); *Presnell v. Paulding County*, 454 F. App'x 763, 768 (11th Cir. 2011) (holding the district court did not abuse its discretion in denying plaintiff's motion to add the new parties, as the claims would have been barred by the statute of limitations, and thus the amendment was futile); *Adams v. Kellett*, 360 F. App'x 67, 70 (11th Cir. 2010) ("[E]ven if Plaintiffs had followed the proper procedures in seeking leave to amend, such an amendment would have been futile because the claims that Plaintiffs seek to add would also be time-barred . . . ."). Plaintiff only argues that one basis for her ADTPA claim—the unlimited repair policy—is not time barred; the Court nevertheless finds that a claim under this policy would be futile.

Among other things, the Defendants argue that Plaintiff's ADTPA claim is time barred because the Act has a four-year statute of limitations period from the time of purchase.  Plaintiff agrees with the four-year limitation but maintains that her claim falls under the ADTPA's savings clause for warranties that extend beyond three years: "in no event may any action be brought under this chapter more than four years from the date of the transaction giving rise to the cause of action unless the contract or warranty is for more than three years." ALA. CODE § 8-19-14.  The statute of limitations period for a claim under a warranty extending over three years is "one year from the expiration date of the contract or warranty or . . . after the person bringing the action discovered or reasonably should have discovered the act or practice which is the subject of the action, whichever occurs first." *Id.*  Because the Defendants provided a warranty of unlimited duration to cover any service or repair needed on their products, Plaintiff argues the savings clause applies.  Although Defendants contend that the unlimited lifetime policy was not a true warranty, the Court assumes without deciding that the policy is a warranty, but finds that Plaintiff fails to state an ADTPA claim on these grounds.

Given that the unlimited lifetime repair policy is the only alleged warranty that Plaintiff argues is not time barred,[9] the Court analyzes whether she can make out an ADTPA claim under this policy alone.  Plaintiff maintains that the Defendants violated the ADTPA by "(5) [r]epresenting that goods or services have sponsorship, approval,

---

[9]  Even if Plaintiff had argued the other alleged warranties were not time barred, the Court has already found that the Defendants' stated commitment to high standards of quality, dependability, and customer satisfaction does not constitute an express warranty; that Plaintiff cannot bring a claim under any express warranty stated in the user manual; and that she fails to sufficiently allege that the Defendants violated its limited warranty against manufacturing defects.

characteristics, ingredients, uses, benefits, or qualities that they do not have"; "(7) [r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(27) [e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5(5), (7), and (27).

The warranty made no representations as to the quality of goods or services provided by TIMI, and thus could not have violated ALA. CODE § 8-19-5(5) or (7). Thus, the only provision of these three that might apply to the Defendants' actions under its unlimited repair policy is that it engaged in unconscionable, false, misleading, or deceptive practices. *See id.* § 8-19-5(27). Plaintiff herself only alleges that the Defendants violated the statute by engaging in deceptive practices by failing to fix her PT 738 pistol after learning of its defect. (*See* Doc. 83 at 11).

As the Court discussed above, however, Plaintiff fails to allege facts demonstrating the Defendants denied repairs to her PT 738 pistol in violation of its unlimited repair policy. Plaintiff has not alleged that she "sought or was denied repairs for any alleged defect," as required to make a claim for breach of a repair warranty. *Hurry*, 2022 WL 3587349, at *5. To the extent that she claims the Defendants had a duty to recall or replace the PT 738 pistol after it became aware of Aunkst's defective pistol, no such duty exists under Alabama law. *Kelly*, 2021 WL 2020611, at *1 n.1. Therefore, the complaint has not stated a claim on which the Defendants can be found liable under the unlimited repair policy for "[e]ngaging in any other unconscionable, false,

misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5.  Count II is therefore due to be DISMISSED.

## VI.  CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED that the Defendants' Motion to Dismiss (doc. 80) is GRANTED and Plaintiff's claims are DISMISSED in their entirety and with prejudice.

A separate judgment shall issue.

Done this 15th day of March, 2023.

      /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE
