IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RITA HARMAN, Individually and on )
Behalf of all others similarly situated, )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )   CIVIL CASE NO. 3:21-cv-697-ECM
                                       )            [WO]
TAURUS INTERNATIONAL                   )
MANUFACTURING, INC., *et al.*,         )
                                       )
        Defendants.                    )

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

Plaintiff Rita Harman ("Harman") alleges her Taurus PT 738 TCP Pistol ("PT 738 pistol" or "PT 738") malfunctioned due to a defect in its slide component.  She brings this class action against Defendants Taurus International Manufacturing, Inc. ("TIMI")—the manufacturer of the PT 738 pistol—and Taurus Holdings, Inc.[1] ("Taurus Holdings") (collectively, "Defendants"), on her behalf and all those similarly situated.  In her second amended complaint (the "complaint"), Harman asserts six claims:  violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I), violation of the Alabama Deceptive Trade Practices Act ("ADTPA") (Count II), breach of express warranty (Count III), breach of implied warranty of merchantability (Count IV), violation of the Magnuson-Moss Warranty Act ("MMWA") (Count V), and injunctive and

_____

[1] Taurus Holdings is the one hundred percent stockholder of TIMI. (Doc. 71 at 7, para. 24).

declaratory relief (Count VI).  On April 15, 2022, the Defendants moved to dismiss the complaint in its entirety. (Doc. 80).  The Court granted the motion (doc. 87) and dismissed the case with prejudice (doc. 88).  Harman appealed (doc. 89), and the Eleventh Circuit vacated the Court's dismissal of Harman's breach-of-express-warranty and FDUTPA claims and remanded for further proceedings, (*see* doc. 94 at 24).[2]

After remand, the Defendants moved to dismiss the complaint. (Doc. 96).  The motion is fully briefed and ripe for review.  After careful consideration, the Court concludes the Defendants' motion is due to be GRANTED in part and DENIED in part.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction of this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  The Court exercises supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(A)(2). "To survive a motion to dismiss, a complaint must contain

---

[2] The Court refers here to the Eleventh Circuit's opinion as it appears on this Court's docket and to the document and page numbers generated by this Court's CM/ECF system.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## IV. FACTS[3]

Harman's husband, Christopher Harman ("Mr. Harman"), purchased a PT 738 pistol from an Opelika, Alabama retail store in December 2011 and gifted it to his wife. (Doc. 71

---

[3] This recitation of the facts is based on Harman's complaint. The Court recites only the facts pertinent to resolving the Defendants' motion to dismiss. For purposes of ruling on the motion, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Harman. *See Bailey*, 843 F.3d at 478 n.3.

at 12, para. 50).  On November 27, 2020, Mr. Harman was seriously injured at a firing range when the PT 738, upon being fired, blew apart, causing metal pieces to strike him in the face and eye. (*Id.* at 13, para. 56).

According to Harman, the PT 738 pistol is defective and unreasonably dangerous because flaws in its design and manufacture can cause fracturing of the PT 738's components. (*Id.* at 8, para. 27).  The slide allegedly breaks in half at the ejection port, and the pieces become dangerous projectiles, which can strike the shooter or bystanders. (*Id.*). Harman's complaint further alleges that despite actual knowledge of the defect, the Defendants never remedied it, issued an effective and complete warning to the public, or recalled the PT 738 pistol. (*Id.* at 8–9, paras. 30–37).  In fact, Harman alleges, prior to introducing the PT 738 product line in 2009, the Defendants instructed their internal marketing and design teams not to warn the public about the alleged defect. (*Id.* at 9, para. 33).

Harman alleges that in 2014 the slide on Brian Aunkst's ("Aunkst") PT 738 pistol broke in an identical way to hers, causing it to explode in his hand. (*Id.* at 9–10, paras. 39–41). According to the complaint, the Defendants failed to fully investigate what caused the slide to break apart. (*Id.*, para. 40).  Harman alleges the Defendants knew about and inspected Aunkst's defective PT 738 but again instructed their marketing teams to avoid mentioning the defect in advertising materials. (*Id.*).

According to Harman, the Defendants provided four express warranties for the PT 738 pistol.  First, the PT 738 had a limited warranty "to be free from defects in material

and workmanship." (*Id.* at 27, para. 115).  Second, PT 738 purchasers received an unlimited lifetime repair warranty. (*Id.* at 28, paras. 118–19).  Third, Harman claims the Defendants publicized their "commit[ment] to the very highest standards of quality, dependability, and most of all, customer satisfaction," which constituted an express warranty that their guns were free from design and manufacturing defects. (*Id.*, para. 119).  Finally, in the PT 738's instruction manual, the Defendants reiterated their lifetime repair policy and limited warranty and represented that PT 738 pistols "were manufactured to perform properly with the original parts as designed."[4] (Doc. 71 at 27, para. 114).

Harman filed her original complaint in the United States District Court for the Southern District of Florida on February 2, 2021. (Doc. 1).  On March 25, 2021, Harman amended her complaint for the first time. (Doc. 26).  The case was then transferred to this Court on October 18, 2021, (doc. 43) and was subsequently consolidated for discovery purposes with Mr. Harman's action against the Defendants (*Christopher Harman v. Taurus Int'l Mfg., Inc.*, Case No. 3:21-cv-98) (doc. 67).  The Defendants moved to dismiss the first amended complaint or for a more definite statement (doc. 45), which the Court granted in part and denied in part (doc. 70), and Harman filed her second amended complaint on March 18, 2022 (doc. 71).  The Defendants moved to dismiss the second amended complaint (doc. 80), which the Court granted (doc. 87).  Harman appealed. (Doc. 89).  The Eleventh Circuit affirmed the Court's Opinion in part, vacated it in part, and remanded for

---

[4] Following the Eleventh Circuit's opinion, the only warranty claim still pending is the "breach-of-warranty claim based on a manufacturing defect," which is contained in the first warranty that the PT 738 is "free from defects in materials and workmanship." (Doc. 94 at 7, 16).

further proceedings. (Doc. 94).  On remand, the Defendants moved to dismiss the three remaining substantive claims arising from (1) a breach of express warranty, (2) the MMWA, and (3) the FDUTPA, as well as the claim for equitable relief.

## V.  DISCUSSION

The Defendants move to dismiss the complaint in its entirety.  The Court addresses Harman's claims as follows:  (1) the breach-of-express-warranty claim, (2) the MMWA claim, (3) the FDUTPA claim, (4) Harman's standing to seek injunctive and declaratory relief, and (5) Taurus Holdings' potential liability.

### A.    Express Warranty

On appeal, the Eleventh Circuit concluded that "Harman stated a plausible breach-of-express-warranty claim [for breach of the materials-and-workmanship warranty] under Alabama law" such that her "case may move forward to discovery."  (Doc. 94 at 17; 18). Despite the Eleventh Circuit's ruling, the Defendants argue the Court may still dismiss the breach-of-express-warranty claim because Harman failed to fulfill her obligations under the warranty.  But the Court will not ignore a clear directive from the Eleventh Circuit to allow this claim to proceed to discovery.   Accordingly, consistent with the Eleventh Circuit's opinion, the Defendants' motion to dismiss the breach-of-express-warranty claim is due to be denied.

### B.    Magnuson-Moss Warranty Act

The parties appear to agree that Harman's MMWA claim rises or falls with her breach-of-express-warranty claim. Indeed, the Defendants assert that "[b]ecause her

6

MMWA claim depends on [her breach-of-warranty] claims, [Harman] also fails to state a claim under the MMWA." (Doc. 96 at 17).  The Defendants rely exclusively on the premise that if the express-warranty claim fails, the MMWA claim must fail as well.[5]  With no argument from the Defendants on the viability of the MMWA claim with the breach-of-express-warranty claim surviving their motion to dismiss, the Defendants fail to carry their burden, and the MMWA claim survives.

## C.    FDUTPA

Unlike Harman's breach-of-express-warranty and MMWA claims, her FDUTPA claim does not survive the Defendants' motion to dismiss.  In their motion, the Defendants claim that Harman does not have constitutional standing to bring a FDUTPA claim because she did not purchase the PT 738 pistol.  Because standing is a jurisdictional question, and the Court must assure itself that it has jurisdiction before examining the merits of a claim, the Court first addresses the Defendants' standing argument. *See Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1311 (11th Cir. 2024) ("[S]tanding is a threshold jurisdictional question . . . ."); *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (June 26, 2025) ("[E]ven if the parties fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court cannot proceed unless it makes an independent determination that it has jurisdiction."). The Court then examines the merits of Harman's FDUTPA claim.

---

[5] In their briefing, the Defendants note that the Eleventh Circuit did not remand the MMWA claim. (Doc. 96 at 16).  That's true.  But the Defendants also state that "[a] claim under the MMWA only exists . . . if a valid breach-of-warranty claim under state law is stated." (Doc. 96 at 17) (citing *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 n.1 (11th Cir. 2006)).  Because the Court finds, per the Eleventh Circuit's direction, that a valid breach-of-warranty claim exists under Alabama law, the MMWA claim may proceed.

1.      **Article III Standing**

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  A plaintiff must show she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision" to have standing. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  The Defendants only challenge the first element of standing—Harman's injury.  They rely on *Calderon v. Sixt Rent a Car, LLC*, in which the Eleventh Circuit noted the plaintiffs "ha[d] not suffered any actual damages" because they could not show "actual out-of-pocket damages as required by FDUTPA because they never paid anything to [the defendant]." 114 F.4th 1190, 1211–12 (11th Cir. 2024).  Using *Calderon*'s language, the Defendants argue Harman cannot establish standing.  But the Eleventh Circuit's opinion in *Calderon* did not disturb that district court's finding that the "[p]laintiffs very well could have suffered injury-in-fact under Article III while failing to have suffered actual damages under FDUTPA." *Calderon v. Sixt Rent a Car, LLC*, 2022 WL 4355761, at *5 (S.D. Fla. Sept. 20, 2022), *aff'd in part, rev'd in part by Calderon*, 114 F.4th at 1212.

*Calderon* provides analogous facts to those presented here as the named plaintiffs in *Calderon* were not the purchasers of the product or service.  In *Calderon*, the plaintiffs brought a class action alleging the defendant (a rental car company) breached contracts with plaintiffs and violated FDUTPA by charging them additional fees stemming from

damage to rental cars. *Calderon*, 114 F.4th at 1198–99. The Eleventh Circuit held each named plaintiff did not suffer "actual damages" and failed to state a FDUTPA claim because the insurance company or a plaintiff's employer was the purchaser, *i.e.*, the one who paid the defendant.[6] *Id.* at 1210–12. Even though the plaintiffs did not suffer "actual damages" to sustain a FDUTPA claim, the Eleventh Circuit did not hold that these plaintiffs lacked standing to pursue the claim and indeed addressed the merits of the claim. *Id.* Consistent with *Calderon*, Harman has standing under Article III to pursue damages, and the Court proceeds to the merits of her FDUTPA claim.

### 2.    Timeliness—Fraudulent Concealment

FDUTPA claims are subject to a four-year statute of limitations. *See* Fla. Stat. § 95.11(3)(e); *Brown v. Nationscredit Fin. Servs. Corp.*, 32 So. 3d 661, 662 n.2 (Fla. Dist. Ct. App. 2010). "When a FDUTPA claim is based on a product purchase, the statute begins to run from the date of sale." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1228 (S.D. Fla. 2021). In its prior order, the Court dismissed the FDUTPA claim as barred by the applicable statute of limitations. (Doc. 87 at 14–17). The Eleventh Circuit vacated that portion of the Court's order, determining that the statute of limitations could have been tolled by the Defendants' alleged fraudulent concealment, and asked this Court to determine whether the Defendants owed the Plaintiff a duty to disclose the PT 738's known defect. (Doc. 94 at 20–24). The Eleventh Circuit assumed that "the statute of limitations

---

[6] One of the named plaintiffs simply refused to pay the invoices, and the defendant deleted all the charges from that individual's account. *Id.* at 1210. The Eleventh Circuit concluded that he too failed to state a claim under FDUTPA. *Id.*

may be tolled by fraudulent concealment by the defendant" based on the parties' agreement. (*Id.* at 20–21). However, that court also cited caselaw to the contrary. (*Id.* at 21 n.8 ("*But see Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.*, No. 2:97-cv-416, 2000 WL 33992234, at *8 (M.D. Fla. Mar. 31, 2000) (concluding that 'the doctrine of fraudulent concealment is unavailable under Florida law').")). For the following reasons, the Court finds that Florida does not generally recognize fraudulent concealment as a tolling doctrine and accordingly determines that the Plaintiff's FDUTPA claim is barred by the statute of limitations.

The Florida Supreme Court recognized the fraudulent concealment doctrine in *Proctor v. Schomberg*, 63 So. 2d 68 (1953). The Florida Legislature subsequently enacted Florida Statute section 95.051, which sets forth nine circumstances that can toll a statute of limitations.[7] That list is exhaustive. *See* Fla. Stat. § 95.051(2) ("A disability or other reason does not toll the running of any statute of limitations except those specified in this section . . . ."); *Hearndon v. Graham*, 767 So. 2d 1179, 1185 (Fla. 2000) ("[T]he tolling statute specifically precludes application of any tolling provision not specifically provided

---

[7] These are: (a) "[a]bsence from the state of the person to be sued"; (b) "[u]se by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued"; (c) "[c]oncealment in the state of the person to be sued so that process cannot be served on him or her"; (d) "[t]he adjudicated incapacity, before the cause of action accrued, of the person entitled to sue"; (e) "[v]oluntary payments by the alleged father of the child in paternity actions during the time of the payments"; (f) "[t]he payment of any part of the principal or interest of any obligation or liability founded on a written instrument"; (g) "[t]he pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action"; (h) "[t]he period of an intervening bankruptcy," which "tolls the expiration of a tax certification under s[ection] 197.482 and any proceeding or process under chapter 197"; and (i) "[t]he minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue." Fla. Stat. § 95.051(1)(a)–(i).

10

therein." (citing Fla. Stat. § 95.051(2))). Because section 95.051 does not provide for tolling of the statute of limitations based on fraudulent concealment, that tolling doctrine cannot save the Plaintiff's FDUTPA claim.[8] *See Dobbs v. Sea Isle Hotel*, 56 So. 2d 341, 342 (Fla. 1952) ("[H]ad the legislature intended to establish other exceptions [to a statute of limitations] it would have done so clearly and unequivocally. . . . We cannot write into the law any other exception, nor can we create by judicial fiat a reason, or reasons, for tolling the statute since the legislature dealt with such topic and thereby foreclosed judicial enlargement thereof.").

Though a handful of decisions rendered by Florida courts continued to recognize fraudulent concealment as a tolling doctrine after the passage of section 95.051, those cases failed to grapple with that statute, and their reasoning is therefore unpersuasive. *See Nardone v. Reynolds*, 333 So. 2d 25 (Fla. 1976)[9]; *S.A.P. v. State, Dep't of Heath & Rehab. Servs.*, 704 So. 2d 583 (Fla. Dist. Ct. App. 1997); *Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809 (Fla. Dist. Ct. App. 1995). Moreover, the Florida Supreme Court has called into question the existence of fraudulent concealment as a tolling doctrine. *See Fulton Cnty.*

---

[8] A separate statute provides for such tolling in the limited context of medical malpractice claims. Fla. Stat. § 95.11(5)(c) (establishing a two-year statute of limitations for medical malpractice actions, except where "it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury"). The statute setting the limitations period for FDUTPA claims contains no such provision. *See* Fla. Stat. § 95.11(3)(e).

[9] The *Nardone* court was applying the statute of limitations found in section 95.11(4), which was in effect when the underlying complaint was filed in 1971. 333 So. 2d at 32 & n.1. That was three years prior to the effective date of section 95.051. *Pac. Harbor Cap.*, 2000 WL 3399234, at *5. "Thus, *Nardone* did not address the effect of the 1974 tolling statute on [section] 95.11(4) or the doctrine of fraudulent concealment." *Id.*

*Adm'r v. Sullivan*, 1997 WL 589312 (Fla. Sept. 25, 1997) ("*Sullivan I*"),[10] *withdrawn and superseded by* 753 So. 2d 549 (Fla. 1999) ("*Sullivan II*").   In *Sullivan I*, the Florida Supreme Court stated that "by enacting section 95.051 . . ., the legislature specifically set forth the limited circumstances which will toll the statute of limitations."  (Doc. 96-2 at 3). In light of section 95.051, the *Sullivan I* court determined that any "court-made tolling provision[s]" not expressly identified in that statute were no longer viable. (*Id.*).  However, *Sullivan I* was subsequently withdrawn and superseded upon rehearing because the court determined that Georgia law, not Florida law, applied. *Sullivan II*, 753 So. 2d at 551.  The *Sullivan II* court accordingly declined to answer the question certified by the lower court. *Id.*

While *Sullivan I* is no longer precedential, it signals the Florida Supreme Court's view regarding the effect of section 95.051 on the doctrine of fraudulent concealment.  *See Pac. Harbor Cap.*, 2000 WL 33992234, at *7 ("Although *Sullivan* [*I*] has been withdrawn, it provides a strong indication that the Florida Supreme Court would hold that in light of [section] 95.051, the doctrine of fraudulent concealment is no longer available."); *see also In re Vitamins Antitrust Litig.*, 2000 WL 33975412, at *4 (D.D.C. Oct. 26, 2000) ("[T]he Court finds the language [in *Sullivan II*] quite suggestive of a distinction between Florida and Georgia law, which would imply that had Florida law been found to apply, the first

---

[10]  Because *Sullivan I* has been withdrawn, its text is apparently only available through the Florida Law Weekly. *See* 22 Fla. L. Weekly S578a.  Because that source does not have page numbers, the Court cites to the copy of the *Sullivan I* order attached to the Defendants' motion to dismiss. (Doc. 96-2).

opinion would not have been withdrawn and the fraudulent concealment doctrine would have been held inapplicable.").

This Court embraces the reasoning in *Sullivan I* rather than the earlier Florida court opinions which did not squarely address the effect of section 95.051. *See Geary Distrib. Co. v. All Brand Imps., Inc.*, 931 F.2d 1431, 1434 (11th Cir. 1991) ("Where the Supreme Court of Florida has not addressed a particular issue, federal courts are then bound by the decision of the Florida district courts of appeal that address the disputed issue, unless there is an indication that the supreme court would not adhere to the district court's decision."); *see also In re Engle Cases*, 2012 WL 12904243, at *6 n.13 (M.D. Fla. Nov. 26, 2012) (arguing that the plaintiffs' reliance on *Berisford* was "diluted by" *Sullivan I* because the latter case suggested that the Florida Supreme Court would not acknowledge fraudulent concealment in light of section 95.051); *In re Vitamins Antitrust Litig.*, 2000 WL 33975412, at *5 ("Florida caselaw recognizing the doctrine of fraudulent concealment must yield to the clear and unambiguous statement of the Florida legislature."). This conclusion is buttressed by subsequent decisions from the Florida Supreme Court that suggest that any tolling doctrine not included in section 95.051 is preempted by that statute. *See Major League Baseball v. Morsani*, 790 So. 2d 1071, 1075 (Fla. 2001) ("Section 95.051 delineates an exclusive list of conditions that can 'toll' the running of the statute of limitations[] . . . ."); *Hearndon*, 767 So. 2d at 1185 ("[T]he tolling statute specifically precludes application of any tolling provision not specifically provided therein."); *Fed. Ins. Co. v. Sw. Fla. Retirement Ctr., Inc.*, 707 So. 2d 1119, 1122 (Fla. 1998) (citing *Sullivan I*

favorably for the proposition that "when construing statutes of limitations, courts generally will not write in exceptions when the legislature has not").

The Plaintiff's response that "[t]he predominant body of case[]law supports the availability of fraudulent concealment under Florida Law" is unpersuasive. (Doc. 103 at 11 n.3).[11]  Two of the cases she relies on assume that fraudulent concealment is recognized as a tolling doctrine under Florida law only to cursorily demonstrate why it does not apply to the facts of those cases. *See Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003); *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013); *see also Burr v. Philip Morris USA Inc.*, 2012 WL 5290164, at *5 (M.D. Fla. Sept. 28, 2012) ("Because [the p]laintiff has not properly pled or otherwise established a basis for fraudulent concealment, the Court declines to decide whether, under Florida law[,] fraudulent concealment is available as a matter of law to toll the [s]tatute of [l]imitations for wrongful death claims.").[12]  Another of Plaintiff's cases does not deal with this issue at all. *See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1341–43 (S.D. Fla.

---

[11]  The Plaintiff's argument on this point is cabined to a single footnote because she primarily asserts that the Defendants are barred from raising this timeliness argument by Federal Rule of Civil Procedure 12(g)(2), which provides that, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  However, Rule 12(h)(2)(B) permits a party to raise a failure to state a claim argument, such as the running of the applicable statute of limitations, "by a motion under Rule 12(c)."  Because the Defendants could have raised this argument in a Rule 12(c) motion for judgment on the pleadings, the Court can consider their argument, Rule 12(g)(2) notwithstanding. *See Chevaldina v. Ctr. for Individual Rights*, 2024 WL 49695, at *1 & n.3 (11th Cir. Jan. 4, 2024) (affirming the dismissal of a complaint "for failure to state a claim under the relevant statute of limitations" and dismissing the plaintiff's Rule 12(g)(2) argument because "[t]he substance of the Rule 12(b)(6) motion (and the same statute of limitations defense) could have been made under Rule 12(c)").

[12]  Though Plaintiff does not rely on *Burr*, some of the cases she relies on do. *See Lewis*, 530 F. Supp. 3d at 1228 (S.D. Fla. 2021); *Simmons v. Ford Motor Co.*, 2023 WL 5978081, at *4 (S.D. Fla. Sept. 13, 2023).

2013) (dealing with a cause of action for fraudulent concealment, not the tolling doctrine). The balance of her cases ultimately rely on *Nardone*, *Berisford*, or both. *See Lewis*, 530 F. Supp. 3d at 1228–29 (S.D. Fla. 2021); *Simmons v. Ford Motor Co.*, 2023 WL 5978081, at *4 (S.D. Fla. Sept. 13, 2023); *Fisher v. Harley-Davidson Motor Grp., LLC*, 2019 WL 8014364, at *2 (S.D. Fla. Oct. 18, 2019).   Because neither *Nardone* nor *Berisford* is persuasive, Plaintiff's cases relying on them are similarly unpersuasive. *Pac. Harbor Cap.*, 2000 WL 33992234, at *7 ("*Berisford* . . . [is] not authoritative because [it] followed *Nardone* and did not consider the effect of [section] 95.051.").

Because fraudulent concealment is not available under Florida law to toll the statute of limitations as to Harman's FDUTPA claim, the Court grants the Defendants' motion as to that claim.

## D.    Injunctive and Declaratory Relief

In Count VI of her complaint, Harman seeks injunctive and declaratory relief for her substantive claims (breach of express warranty, MMWA, and FDUTPA).   Injunctive relief and declaratory judgments are prospective, equitable remedies—not standalone causes of action. *See McGee v. Solic. Gen. of Richmond Cnty.*, 727 F.3d 1322, 1325 (11th Cir. 2013); *Feingold v. Budner*, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008) ("Declaratory judgments and injunctions are equitable remedies, not causes of action.   A plaintiff must prevail on an underlying claim [to] be entitled to either form of relief.").   The Court addresses Harman's standing to seek these prospective, equitable remedies.

As already stated, the Court must assure itself of its jurisdiction over a claim before addressing its merits even if the parties do not raise the issue. *See Wiand*, 96 F.4th at 1311; *Riley*, 145 S. Ct. at 2201; *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). "Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, . . . the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears that there is a substantial likelihood that [she] will suffer injury in the future.'" *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)). While the Defendants do not address Harman's standing for declaratory relief, they challenge Harman's standing to seek injunctive relief,[13] arguing Harman fails to "allege an injury that is 'certainly impending' and not merely 'possible.'" (Doc. 96 at 19) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). After careful review, the Court finds Harman does not have standing to seek either injunctive or declaratory relief.

This conclusion does not contradict the Court's separate finding that Harman can continue to pursue damages because "a plaintiff must 'demonstrate standing separately for each form of relief sought.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021)

---

[13] The parties seem to agree (as neither objects) that if any of the substantive claims in the complaint survive, declaratory relief should not be foreclosed to Harman at this stage of the litigation. (*See* doc. 96 at 29; doc. 103 at 19). But because of the Court's independent obligation to assure itself of standing, it undertakes the analysis *sua sponte*.

(quoting *Friends of the Earth*, 528 U.S. at 185).  "That a plaintiff has standing to bring one claim does not save another claim for which [she] does not; 'standing is not dispensed in gross.'" *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)).   "Thus, even if a plaintiff can establish standing to pursue separate claims for monetary relief based on allegations of *past* harm, before a court may grant that plaintiff [prospective equitable] relief, the plaintiff must separately establish a threat of 'real and immediate,' as opposed to 'conjectural or hypothetical,' future injury." *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023) (emphasis in original) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 102, 105 (1983)).  The Court addresses Harman's standing to seek injunctive relief before addressing her standing to seek declaratory relief.

### 1.  Injunctive Relief[14]

Harman does not allege sufficient injury to show she could be entitled to injunctive relief.  Specifically, Harman "seeks injunctive relief requiring the . . . Defendants to issue a recall of all [PT 738] pistols." (Doc. 71 at 33, para. 151).[15]  In her response to the motion to dismiss, Harman claims she has standing because she specifically alleges that the defect in workmanship and material allows the slides on the PT 738 pistols to break apart unexpectedly while firing, creating a definite threat of future injury to Harman and the

---

[14] To the extent Harman seeks an injunction in her FDUTPA claim (doc. 71 at 23, para. 89), the reasoning of this Section applies with equal force, so Harman cannot seek injunctive relief on Count I.

[15] Harman's proposed class also includes PT 732 pistols, which are a different caliber of Taurus pistols that are alleged to share the same design defect as Harman's PT 738. (*Id.* at 7, para. 25).  Because Harman does not allege she owns a PT 732, it is not relevant to the pending motion.

proposed class members. (Doc. 103 at 8–9). But the complaint also alleges Harman's PT 738 already suffered this defect, "broke in half," and injured Mr. Harman. (*Id.* at 13, para. 56). The complaint even acknowledges that TIMI has not manufactured the PT 738 for almost a decade. (*Id.* at 14–15, para. 61). The complaint does not allege Harman ever repaired her PT 738 pistol and plans to shoot it again, purchased another PT 738, or will otherwise suffer a future harm from a deceptive trade practice.

These pleading deficiencies belie Harman's attempts to argue there is a threat of "real and immediate . . . future injury." *Williams*, 65 F.4th at 1253 (internal quotations and citation omitted). In *Williams*, the Eleventh Circuit held the named plaintiffs in a FDUTPA case did not have standing to seek injunctive relief "because none of [them] ha[d] . . . alleged that they intend[ed] to buy the [products at issue] again." *Id.* at 1255. Instead, "the operative complaint provide[d] every reason to *doubt* that the [n]amed [p]laintiffs w[ould] ever purchase the [products] again." *Id.* (emphasis in original). The same principle applies here. After Harman's experience with the PT 738 pistol, she is aware of the alleged defect such that she is unlikely to purchase another PT 738, and she does not allege an intention to fire her own PT 738 again. While a theoretical class member who possesses an intact PT 738 pistol with plans to fire it may have standing to seek injunctive relief, that is irrelevant to the current motion. As the proposed named plaintiff, Harman cannot rely on other members of a potential class to establish Article III standing. *See Spokeo*, 578 U.S. at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)). She must have standing on her own. *Id.*; *see also A&M Gerber*

18

*Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019) ("It is well-settled that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of [herself] or any other member of the class." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

At bottom, Harman fails to allege facts sufficient to support her standing to seek injunctive relief because there is no real and immediate threat of future harm to *her*. Harman alleges *past* harm that damages may remedy (should she be entitled to them), but she fails to connect her past harm to a *future* harm that injunctive relief could prevent. Thus, the Defendants' motion to dismiss her claim for injunctive relief is due to be granted.

### 2.    Declaratory Relief

For the same reasons that Harman lacks standing to seek injunctive relief, she cannot obtain declaratory relief. Harman seeks a declaration from the Court that "(1) all [PT 738 pistols] with the [d]efect have a common design [d]efect in workmanship and material that allow[s] the slides on the [PT 738s] to break apart unexpectedly while being fired" and "(2) [the] Defendants knew of the [d]efect in [the PT 738] and failed to disclose material facts about the [d]efect." (Doc. 71 at 33).

"Declaratory relief is by its nature prospective." *McGee*, 727 F.3d at 1325. To have standing to seek "*prospective* relief, such as a declaratory judgment, [a plaintiff] must 'allege facts from which it appears there is a substantial likelihood that [she] will suffer injury in the future.'" *Mack*, 994 F.3d at 1357 (emphasis in original) (quoting *Malowney*,

193 F.3d at 1346); *see also A&M Gerber*, 925 F.3d at 1211 ("[I]f a plaintiff does not assert a reasonable expectation of future injury, [she] lack[s] standing to bring an action for declaratory relief[.]" (third and fourth alterations in original) (internal quotation marks and citations omitted)).  "And that injury must be 'real,' 'immediate,' and 'definite.'" *Mack*, 994 F.3d at 1357 (quoting *Malowney*, 193 F.3d at 1347).

Harman fails to allege a real, immediate, and definite injury to *her*.  Harman's theory of injury (the breach of an express warranty) is similar to plaintiffs' theories of injury in the interpretation of their rights under car insurance policies.[16]  *See Mack*, 994 F.3d at 1357; *A&M Gerber*, 925 F.3d at 1215.  In those cases, plaintiffs argued that they had doubts concerning their rights under the policy and could suffer another car accident while still insured by the same insurance company. *See id.*  The Eleventh Circuit rejected that argument:

> "[T]he possibility that [a plaintiff] may someday be in another car accident . . . and still be insured by [the insurance company] under the same or a similar policy being interpreted the same way, thereby having the issue present itself again . . . is too contingent to constitute a 'substantial likelihood' of future injury."

*Mack*, 994 F.3d at 1357 (first alteration added) (quoting *A&M Gerber*, 925 F.3d at 1215). The same reasoning applies with equal force here.  The Court reiterates that Harman does not allege she ever repaired her PT 738 pistol and plans to shoot it again, purchased another PT 738, or will otherwise suffer a future harm from a deceptive trade practice involving

---

[16] Similar reasoning applies to the alleged deceptive trade practices.

the PT 738.  Any future injury to Harman arising from the PT 738, the same warranty, or the same trade practice is therefore too contingent to constitute a substantial likelihood of future injury.  Thus, Harman fails to establish standing to seek declaratory relief.[17]

## E.    Taurus Holdings' Liability

Consistent with the Court's opinion in the related case of *Christopher Harman v. Taurus International Manufacturing, Inc.*, 2023 WL 2534622, at *6–8 (M.D. Ala. Mar. 15, 2023) ("*Harman I*"), the Court finds the complaint fails to allege sufficient facts to support piercing the Defendants' corporate veil.  Harman's arguments here are largely recycled from the arguments presented in the response to the motion to dismiss in *Harman I*, and her response to the pending motion includes portions that are taken verbatim from that previous submission to the Court. (*Compare* doc. 103 at 20–22, *with Harman I*, Case No. 3:21-cv-98, doc. 51 at 10–11).  Because Harman failed to identify any caselaw to suggest the Court's conclusion in *Harman I* should change, the Court relies on its previous analysis, declines to pierce the corporate veil, and finds Taurus Holdings is a separate entity from TIMI and due to be dismissed from this case. *See Harman I*, 2023 WL 2534622, at *6–8.

## VI.  CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED as follows:

---

[17] Because Harman does not have standing to seek declaratory or injunctive relief, Count VI is due to be denied without prejudice. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (explaining that "a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction" and should therefore be "entered without prejudice" (citation omitted)).

1.      The Defendants' motion to dismiss (doc. 96) is DENIED to the extent it seeks to dismiss Harman's breach-of-express-warranty (Count III) and Magnuson-Moss Warranty Act (Count V) claims.

2.      Count III and Count V remain pending against TIMI.

3.      The Defendants' motion to dismiss (doc. 96) is GRANTED to the extent it seeks to dismiss Harman's FDUTPA (Count I) and declaratory and injunctive relief (Count VI) claims and to dismiss Taurus Holdings as a Defendant.

4.      Count I is DISMISSED with prejudice and Count VI is DISMISSED without prejudice.

5.      Defendant Taurus Holdings is DISMISSED from the case.

DONE this 24th day of September, 2025.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE